BROWN, C.J.,
dissent.
|! Louisiana Administrative Code 40:1.2028 provides:
(G)(1). Discectomy
(a) Description: to enter into and partially remove the disc.
[[Image here]]
(c) Surgical Indications: To include all of the following: Primary radi-cular symptoms, radiculopathy on exam, correlating imaging study, and failure of non-surgical care. There is good evidence that surgery provides initial improvement of radi-cular symptoms with respect to chronic low back pain. There is conflicting evidence that the long-term outcome differs from that of the natural history of healing.
[[Image here]]
(G)(3). Laminotomydaminectomy/foram-enotomy/facetectomy
(a) Description. These procedures provide access to produce neural decompression by partial or total removal of various parts of vertebral bone.
Dr. Ramos conducted a thorough and comprehensive neuro-musculoskeletal examination and found radicular symptoms and radiculopathy. Non-surgical care failed, as therapy only aggravated the problem. The Medical Director found as follows:
The weakness, sensation, and reflex changes have been present since the initial exam on 05.14.2012. Lumbar im *748 aging report dated 06.25.2012 notes Ll-2 HNP with moderate compression of the thecal sac; other levels noted with disc bulge but no mention of central or foraminal neuro-compression.
The clinical records do indicate the need for decompression, with worsening of symptoms including urinary incontinence, and previously and current physical findings.
However the requested four level lami-nectomy ¡discectomy is not indicated. Although weakness and functional concerns are present, the specific levels of compression must correlate with the clinical exam, clinical testing, and imaging reports. (Emphasis added)'.
The issue in this case is simply whether the imaging study (the MRI) correlated with the clinical findings of Dr. Ramos. The Medical Director | ¡^recognized that the MRI did show a need for decompression at some levels, but not at all four levels.
The second medical opinion of Dr. Smith concluded that Gilliam’s medical care was reasonable and necessary for the work related injuries sustained in May 2012. He continued that, while the radiographic changes described are certainly pre-exis-tent, the symptoms were undoubtedly aggravated by his fall. Dr. Smith concluded that Gilliam could not return to unrestricted work activities, stating, “I do not believe that there is any therapy available including the suggested surgery that would permit him to return to work activities requiring lifting of greater than 100 pounds. I feel that some program of rehabilitation with efforts to qualify him for job activities that would not require heavy manual lifting would be indicated in this gentleman.”
Dr. Ramos testified that the MRI showed a broad-based central disc herniation which had compromised both the right and left sides at L1-L2 and a central disc bulge at L2-3, which could affect both nerve roots. The moderate left paracen-tral disc bulge at L3-4, L4-5 described a “small prominence toward the left, but the dis[e] is central and it’s broad based.”
Although the surgery would not permit Gilliam to return to work activities requiring lifting of greater than 100 pounds, it would permit him to function in other work activities that would not require heavy manual lifting. Thus, the surgery is not purely for the purpose of pain relief. Clearly, Dr. Ramos’ clinical findings are supported by the MRI. Therefore, the guidelines do provide for the requested surgery.